Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4437 | **DATE** | 11/19/2004 |
| **CASE TITLE** | EXPERIAN INFORMATION vs. I-CENTRIX LLC, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (8-1, and 8-2) to dismiss and to transfer case is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 23 2004 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EXPERIAN INFORMATION
SOLUTIONS, INC. and EXPERIAN
MARKETING SOLUTIONS, INC.,

Plaintiffs,

v.

I-CENTRIX LLC and ROBERT G. GAITO,

Defendants.

No. 04 C 4437
Judge James B. Zagel



## MEMORANDUM OPINION AND ORDER

Plaintiffs Experian Information Solutions, Inc. and Experian Marketing Solutions, Inc., filed a four-count complaint against Defendants I-Centrix LLC and Robert G. Gaito alleging: (1) misappropriation of trade secrets under the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1; (2) breach of an Employee Agreement; (3) breach of a Consulting Services Agreement; and (4) breach of the duty of loyalty. Defendants seek to dismiss Experian's complaint pursuant to *Federal Rules of Civil Procedure 12(b)(2)* and *(3)* and 28 U.S.C. § 1406(a) for lack of jurisdiction and venue; or, in the alternative, seek to transfer this case to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a).

*Background*

Experian Information Solutions, Inc. ("EIS") is an Ohio corporation with its principal place of business in Costa Mesa, California. Experian Marketing Solutions, Inc. ("EMS") is a Delaware corporation with its principal place of business in Schaumburg, Illinois[1] and is a

---

[1] Defendants failed to challenge this fact until their Reply Brief, thereby waiving this argument. *See Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). Even if I considered Defendants' argument, I would still find (based on the facts before me at this

corporate affiliate of EIS. The two companies operate collectively as "Experian." I-Centrix LLC ("I-Centrix") is a New York limited liability company with its principal place of business in Rensselaer, New York. Robert Gaito is permanently domiciled in Troy, New York and maintains an office at I-Centrix's corporate headquarters in Rensselaer, New York.

EMS's corporate predecessor, Brigar Computer Services ("BCS"), hired David Gaito in 1992. Gaito became a Senior Account Executive on January 2, 1997, and was promoted to Vice President for Database Solutions that same month. On September 8, 1997, Gaito entered into a confidentiality agreement with BCS.[2] Later that year, BCS liquidated into its parent company, Direct Marketing Technology, a subsidiary of Experian Holdings. On March 31, 2000, Direct Marketing Technology transferred substantially all of its assets to a wholly-owned subsidiary, Metromail Corporation. On May 8, 2000, Metromail changed its name to Experian Marketing Solutions ("EMS"), with its principal place of business in Schaumburg, Illinois. Gaito remained employed with the company through this process.

Among other things, Experian is in the business of providing its clients data management services, including customer relationship management products and services. While employed by Experian, Gaito and his colleague Jeremy Green were involved in the strategic design of Experian's allegedly proprietary and confidential methods of using "pinning" or "linkage" technology, which assigns "PIN" identifiers to individuals in order to link those individuals across multiple databases. This project became the foundation of Experian's custom solution for

___

time) that EMS's principal place of business is Schaumburg, as alleged in the Plaintiffs' Complaint and averred to in supporting affidavits.

[2] Fellow employees Jim Finnerty and Jeremy Green signed similar confidentiality agreements.

Providian Bank and was called "Providian PIN." Based on that project, Experian developed Custom TrueVue, a pinning solution generally applicable to a wide variety of companies. Each of these projects involved Experian's allegedly proprietary and confidential method of using pinning technology, also known as its "matching technology." Gaito and Green had access to the designs, code, and documentation of this matching technology during their employment with Experian.

Gaito left Experian and formed his own company, I-Centrix, in March, 2000.[3] One month later, Gaito entered into a consulting agreement with EIS. The agreement defined EIS as encompassing "any and all business units, divisions, subsidiaries, affiliates and joint ventures of Experian Information Systems, Inc.," which included EMS, its corporate affiliate. The agreement referred to these entities collectively as "Experian." The consulting agreement stipulated that I-Centrix's employees and approved subcontractors would perform work as requested by Experian at such times and places as mutually agreed upon, and was to continue indefinitely unless terminated by either party.

The consulting agreement specified that any work product developed by I-Centrix within the scope and during the time period of the agreement belonged to Experian. It also contained a confidentiality agreement, which stated that I-Centrix and its employees would not disclose to any third party proprietary information provided by Experian to I-Centrix under the consulting agreement. Additionally, Gaito agreed not to solicit, hire, contract with, or engage the services of any Experian employee with whom I-Centrix personnel had contact during the performance of the consulting agreement or twelve months after its termination.

---

[3] Gaito's colleagues Green and Finnerty also left Experian to work for I-Centrix.

3

Between May, 2000 and March, 2002, Gaito and I-Centrix consulted on several Experian projects, including the migration of two Experian products, Z-24 and Circbase, using the Custom TruVue package and pinning technology developed while Gaito was an Experian employee. The Experian teams responsible for the production and development of resources for the Z-24 and Circbase projects were located in Schaumburg, Illinois. While providing consulting services to Experian on these and other projects, Gaito and other I-Centrix personnel traveled to Experian's offices in Schaumburg twelve times. I-Centrix personnel also communicated by mail, fax, telephone, and e-mail with Experian personnel in Schaumburg and used computers that accessed servers located in Schaumburg. During this time, Gaito, Finnerty, and Green had access to Experian's allegedly proprietary methods of using its pinning technology, as well as access to a detailed proposal for marketing services to AOL that included a design based on Experian's pinning technology.

On March 6, 2002, Gaito filed a patent application for a "Contact Relationship Management System and Method," assigning rights to I-Centrix. On August 7, 2002, Gaito terminated the consulting agreement. Experian claims that Gaito's patent application "disclosed core capabilities of Experian's proprietary and confidential methods of using pinning technology," as well as "proprietary system architecture details substantially similar to Experian's proposed AOL solution" and to another project on which Gaito, Green and Finnerty participated while Experian employees. Experian also alleges that I-Centrix provides marketing services in direct competition with Experian and solicits Experian customers (some of whom have transferred their business to I-Centrix) using Experian's proprietary information. These

4

allegations form the basis of Experian's complaint claiming violations of the Illinois Trade Secrets Act, breach of contract by Gaito and I-Centrix, and breach of the duty of loyalty.

*Personal Jurisdiction*

In order to defeat Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiff Experian need only make a prima facie showing of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 911 (N.D. Ill. 2002). In reviewing the complaint and affidavits, I must draw all reasonable inferences in favor of Plaintiffs. *Master Tech*, 181 F. Supp. 2d at 911. Furthermore, when faced with conflicting evidence, I must resolve factual disputes in the Plaintiffs' favor. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997).

In a case based on diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *Hyatt*, 302 F.3d at 713. In Illinois, the long-arm statute extends personal jurisdiction to the limit allowed under the due process clause of the Fourteenth Amendment. *See* 735 ILCS 5/2-209(c); *and Sutherland v. Cybergenics Corp.*, 907 F. Supp. 1218, 1221 (N.D. Ill. 1995). Thus, the court's inquiry is whether the district court could assert personal jurisdiction over the defendant consistent with due process. *Sutherland*, 907 F. Supp. at 1221 (citations omitted). Due process requires that a defendant have "minimum contacts" with a forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Glass v. Kemper Corp.*, 930 F. Supp. 332, 338 (N.D. Ill. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant establishes "minimum contacts" through actions demonstrating purposeful availment of "the privilege of conducting activities

within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Moreover, the defendant should "reasonably anticipate being haled into court" in the forum as a result of these minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A federal district court may exercise two types of jurisdiction over an out-of-state defendant: general and specific. *Glass*, 930 F. Supp. at 338. In this case, Plaintiff does not allege grounds for general jurisdiction over Defendant but argues that specific jurisdiction exists. For a court to assert specific jurisdiction, the defendant's contacts with the forum must be "related to the controversy underlying the litigation." *Id.* at 339 (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990)). If there is such a relationship, the plaintiff must show only that the defendant's contacts with the forum reached a "minimum" threshold. *Sutherland*, 907 F. Supp. at 1222.

Gaito and I-Centrix argue that this court has no personal jurisdiction in this matter, either specific or general, because they did not establish sufficient minimum contacts with Illinois to anticipate being haled into court. I disagree. Defendants were present in Illinois twelve times during the course of the consulting agreement; far fewer visits to the forum state have been found sufficient to constitute minimum contacts. *See, e.g., Vandeveld v. Christoph*, 877 F. Supp. 1160, 1165 (N.D. Ill. 1995) (holding that "one visit to the state is sufficient to establish the minimum contacts necessary to support personal jurisdiction, if the cause of action arose out of the defendant's conduct on that visit"). A defendant's presence in the forum state "while conducting business relevant to the dispute" is a significant factor in determining whether personal jurisdiction may be exercised validly. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213-14 (7th Cir. 1984); *and United States Gypsum Co. v. All Tank Sales & Supply Co.*,

977 F. Supp. 1340, 1343 (N.D. Ill. 1997) ("All Tank's [single] visit to Illinois during the course of performance is a significant contact with the state.") Experian alleges that Defendants maintained an ongoing relationship with Experian staff in Illinois as a result of the consulting agreement and Gaito's former employment with Experian. Defendants also admit communicating with individuals located in Schaumburg via telephone and e-mail throughout the consulting agreement. Drawing all reasonable inferences in favor of the plaintiff, Defendants' travel to Illinois to meet with Experian during the consulting agreement was pursuant to the agreement and therefore related to this dispute, which alleges breach of the agreement and a violation of the Illinois Trade Secrets Act based on Defendants' work under the agreement (as well as Gaito's prior work for EMS.)[4]

Plaintiffs also bear the burden of establishing that the exercise of jurisdiction in Illinois would be fair and reasonable by demonstrating that personal jurisdiction over Gaito and I-Centrix would comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Relevant factors to consider in determining whether jurisdiction is fair and reasonable include the forum's interest in adjudicating the dispute, the interest of the forum in

---

[4] Plaintiffs also assert that Defendants' use of computers that accessed servers located in Schaumburg constitutes "minimum contacts" with this jurisdiction. Work occurring on an Illinois-based and -operated computer network may contribute to an "ongoing relationship" between the parties and therefore give defendants reason to anticipate suit in Illinois. *See Budget Rent-A-Car Corp. v. Crescent Ace Hardware*, No. 03 C 00930, 2003 U.S. Dist. LEXIS 12084, at *13-14 (N.D. Ill. July 5, 2003). In this case, Plaintiffs allege that pursuant to the consulting agreement, Defendants accessed and used a Schaumburg-based and -operated computer network on which Plaintiffs stored the allegedly proprietary information at the heart of this case. However, Defendants state that the computers they used during the consulting agreement were located in New York and that they were unaware they were routed to an Illinois-based network while working on the New York-based computers. Plaintiffs have failed to rebut this assertion. Therefore, Plaintiffs' argument that personal jurisdiction can be established through Defendants' unknowing use of Illinois-based servers is rejected.

regulating the activity involved, the burden on the defendant, the relative burden of prosecution elsewhere on the plaintiff, and the extent to which the claim is related to the defendant's local activities. *Id.* at 476-77 (citations omitted).

The first two factors are of primary significance in this case. Illinois has a strong interest in providing a forum for Plaintiffs, who bring their claim in part under the Illinois Trade Secrets Act. Further, EMS has its principal place of business in Illinois and suffered injuries within Illinois's borders. Despite Defendants' claim that EMS's principal place of business is in California, where its office headquarters are listed, Experian has demonstrated sufficiently that EMS's principal place of business is indeed Schaumburg, Illinois. Defendants also argue that their activities in Illinois have no relationship to Plaintiffs' claims. Experian, though, has demonstrated that the Defendants' contacts with Illinois took place during the execution of the consulting agreement, through which Defendants allegedly gained access to and misappropriated confidential information used in Gaito's patent application.

Plaintiffs have also demonstrated that it would not be unduly burdensome for Defendants to litigate in Illinois, given that Experian employees, along with other key witnesses, work and reside in Illinois. These first three factors strongly indicate that jurisdiction in Illinois comports with fair play and substantial justice. Furthermore, the party objecting to a forum bears the burden of presenting a "compelling case" that litigating there would be unreasonable. *Burger King*, 471 U.S. at 477. Defendants have not presented a compelling case that litigating in Illinois would be unreasonable and have therefore not met their burden, whereas Plaintiffs have demonstrated that this court's exercise of personal jurisdiction would be fair and reasonable.

*Venue*

I-Centrix and Gaito also move to dismiss on the basis of improper venue. Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(2). Experian has established that a substantial part of the events or omissions giving rise to the claim occurred in Illinois. Defendants' communications with Experian staff in Illinois pursuant to the consulting agreement and their physical presence in Illinois on twelve separate occasions, also pursuant to that agreement, establish venue as a matter of law. *See Master Tech*, 181 F. Supp. 2d at 913-14.

*Transfer of Venue*

Finally, in the event that I find personal jurisdiction and venue to be proper, I-Centrix and Gaito seek to transfer this case to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interests of justice." To transfer a case under Section 1404(a), Defendants must show that: (1) venue is proper in this court, (2) venue and jurisdiction are proper in the Northern District of New York, and (3) the transfer will serve the convenience of the parties and witnesses and the interests of justice. *Vandeveld*, 877 F. Supp. at 1167 (citation omitted). This motion to transfer turns on the third factor: the convenience of the parties and witnesses and the interests of justice.[5] Defendants must demonstrate that the transferee forum is "clearly more convenient" than this

---

[5] The first and second factors are satisfied. As discussed above, venue is proper in this court. Venue and personal jurisdiction are also proper in the transferee court as Gaito is domiciled in New York, I-Centrix is a New York limited liability company with its principal place of business in New York, and at least some of the alleged acts giving rise to Plaintiffs' claims occurred in New York.

9

court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The decision to transfer is committed to my sound discretion. *Id.* (citations omitted).

The parties disagree as to the convenience of litigating in Illinois versus New York, though it seems likely that both locations will serve as sources of proof. Defendants have demonstrated that litigating in Illinois would be inconvenient, given that their primary witnesses work and reside in New York. However, Experian would be similarly inconvenienced by litigating in New York. Experian plans to call as witnesses individuals who work or reside in the Northern District of Illinois, including a signatory to the consulting agreement. Experian also asserts that the members of the production and resource development teams for the Z-24 and Circbase projects at issue in this case "were" located at Experian's Schaumburg facility; if this is still accurate, the balance would not clearly weigh in favor of Defendants. Furthermore, Experian's complaint seeks relief under the Illinois Trade Secret Act, and it is likely that an Illinois federal court will be more familiar with this statute than would a New York federal court. *See Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 U.S. Dist. LEXIS 14790 at *18 (N.D. Ill. Aug. 12, 2002) (a court's familiarity with the applicable law is a relevant consideration in determining whether transfer is in "the interests of justice").

Defendants have not demonstrated that litigating in New York would be significantly more convenient and therefore have not met their burden to transfer venue. A plaintiff's choice of forum "should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld*, 877 F. Supp. at 1167. Defendants note that this standard does not apply when the "cause of action did not conclusively arise in the chosen forum." *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002) (citation omitted). However, at this time the situs of the cause of action appears to have arisen in both the transferor and

transferee forum. Given that the other factors do not weigh more heavily on either side, the motion to transfer is denied, though I may revisit the matter after the close of discovery.

*Conclusion*

For the reasons stated above, the motion to dismiss for lack of jurisdiction and venue, and in the alternative, to transfer venue, is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: 19 Nov 2004